**UNITED STATES of America, Plaintiff,**

v.

**Angeles Ramonita GARCIA, Defendant.**

**Civ. No. 79–2431.**

United States District Court,
D. Puerto Rico.

June 12, 1980.

Brian A. David, Chicago, Ill., for plaintiff.

Jose A. Quiles, U. S. Atty., Hato Rey, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

Pending before this Court is Defendant's petition for a Writ of Habeas Corpus, and the Government's response thereto. Petitioner moves to vacate her sentence alleging that her guilty plea was induced by an unfulfilled promise of probation.

Petitioner was charged in a seventy–five count indictment which alleged mail fraud (18 U.S.C. § 1341), conspiracy to defraud the United States (18 U.S.C. § 370), and making false statements to the United States (18 U.S.C. § 371). Pursuant to a written plea agreement, she plead guilty to three of these counts. Thereafter the Court imposed a sentence of five years imprisonment and a fine in the amount of $21,000. The Government then dismissed the remaining seventy–two counts with the Court's approval.

The substance of Petitioner's § 2255 Motion is that the Government at sentencing failed to comply with its obligations under the plea bargaining agreement.

The hearing for Defendant's change of plea was held on February 12, 1977. Petitioner appeared, assisted by retained counsel, Mr. Gerardo Ortiz del Rivero, one of the most experienced and competent counsel of the criminal bar of this jurisdiction and Court. Throughout the proceedings Petitioner was assisted by an official interpreter, and all matters were fully translated to her from English to Spanish, and vice versa.

Before accepting the change of plea, Petitioner was placed under oath and subjected by the Court to an extensive inquiry regarding understanding of her rights and of the consequences of entering a plea of guilty. During this discourse the written plea bargaining agreement was entered into evidence. This agreement is signed by Petitioner, by her criminal counsel, and by Mr. Francisco Dolz, the civil lawyer representing her in an action that was filed by the United States against her to recover the funds which were the subject of the criminal proceeding. Mr. Dolz was also present and participated in the inquiry.

The written plea bargaining agreement entered into by the Petitioner and the Government reads as follows:

"On February 11, 1977, in San Juan, Puerto Rico after extensive negotiations between counsel for the defendant, Angeles Ramonita Garcia, Gerardo Ortiz del Rivero, and attorneys for the Government, Jorge Rios Torres, Assistant United States Attorney, and James J. Graham, Special Attorney, United States Department of Justice, the parties in the captioned matter, expressly agree and understand that the below summarized paragraphs one through four are the complete and total agreement entered into by the defendant voluntarily after being repeatedly consulted by her attorneys during the course of the negotiations which covered several months.

1. The defendant agrees to plead guilty to three counts.

2. *The defendant will cooperate with any future inquiry in this or any other matter* including interviews by Federal Bureau of Investigation Agents and testimony on behalf of the United States in any criminal proceedings.

3. The defendant further understands that *no commitment has been made by the United States to limit its presentation or efforts at the entering of the plea or in connection with sentencing.* However, *the Government will make the defendant's cooperation known to the Court at sentencing.* (A)

4. The defendant further understands that this agreement does not limit prosecution for any perjury by the defendant in the future in connection with any testimony."

"(A) *If the defendant's cooperation is complete* and all testimony given is completely truthful, the United States has advised the defendant, that *a recommendation to the Court at sentencing by the United States may include a recommendation of probation and fine.* However,

*in any case, the defendant understands that the sentence to be imposed shall be in the sole discretion of the Court and is not fixed in the plea agreement."* (Emphasis ours).

As part of this hearing, the Government revealed for the record all the evidence it had against Petitioner. After being satisfied that Petitioner's plea complied with the requisites of voluntariness and the law, the Court accepted her plea and ordered the preparation of a pre–sentence report. The Court at this moment inquired of Petitioner and her counsel whether any provision was being made for restitution of the money. The Court advised Petitioner, and made it plainly clear, that restitution would be something that would be considered as having important consequences at sentencing. Petitioner's counsel acknowledged this situation and informed the Court that the Petitioner was in the process of negotiating with the United States Attorney to determine the exact amount of money that was owed, and that she intended to make full restitution.[1]

Nine months later, on November 18, 1977, Defendant appeared before the Court for sentencing.[2] Petitioner was again assisted by counsel and the official court interpreter. Both of her attorneys pleaded at length for leniency. The Court insisted on being informed of the steps that had been taken by Petitioner toward restitution. The Court was again told that a civil suit was pending for that purpose and that the parties had not been able to reach an agreement as to the exact amount of money involved. Counsel for the defense attempted to assure the Court that an agreement would be reached soon because, as he claimed, his client was aware from the beginning of the importance of what was expected of her in this respect. At this point the Government interjected that although Petitioner had cooperated in the criminal investigation, her cooperation had not been complete because her offer of res-

---

1. We deem it important to reproduce the relevant portions of the change of plea proceedings. See Appendix A.

2. The relevant portions of that hearing are also reproduced at Appendix B.

titution was limited to the return of $100,000, while the total in question amounted to approximately $900,000. The Government proceeded to recommend the imposition of a jail sentence and fine against Petitioner.

In response, Petitioner reiterated her contention to the effect that she had cooperated fully in the criminal investigation and that she intended to make restitution, in some amount, at some point in the future.

Considering the time that had elapsed since the plea was accepted, and the relative lack of progress towards meaningful restitution, the Court refused to accept Petitioner's vague promises and proceeded to sentence her as previously indicated. The Court did indicate to Petitioner, however, that if adequate restitution was made by her within 120 days from sentence the Court would entertain a motion for reduction of sentence. This event never took place.

We are thus called upon to interpret the plea bargaining agreement and to determine whether there was a violation of the same by the Government.

■ Plea bargaining is today a fundamental part of our criminal justice system. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir., 1978). Its benefits rest upon Defendant's waiver of almost all fundamental constitutional rights. *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). Thus, where a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, supra, at p. 262, 92 S.Ct. at 499. Here, however, we find that all promises have indeed been fulfilled.

■ First, unlike *Santobello*, supra, and its progeny, in the present case there is no binding promise of recommended probation in exchange for full cooperation. The Government here promised only that "a recommendation to the Court at sentencing by the United States *may* include a recommen-

dation of probation and fine." (Emphasis supplied). The Government is only required to show a good faith consideration of Petitioner's cooperation before deciding whether, based upon the degree of cooperation shown, a defendant deserves a recommendation of probation, *United States v. Incrovato*, 611 F.2d 5 (1st Cir. 1979); *United States v. Bowler*, 585 F.2d 851 (7th Cir., 1978). In this type of agreement, it is the duty of the Government to set forth in the record sufficient reasons for its belief that Petitioner has not cooperated fully and that such a recommendation is not proper. It is the Court's function to determine whether an adequate evaluation of this factor has been made by the Government as promised. *United States v. Bowler*, supra. We believe it has, but this is immaterial to the real issue.

■ It is undisputed from the record that the Government, and the Court, did consider Petitioner's cooperation in the criminal investigation of the case. The Court in fact indicated that it would assume, for sentencing purposes, that this was all the cooperation that was required of Petitioner, although one would wonder why Petitioner's civil lawyer, Mr. Dolz, would also sign the agreement and participate in the hearings, unless it was for the purpose of coordinating Petitioner's cooperation "with any future inquiry in this or *any other matter*", i. e. full restitution in the civil action. In this light, and in view of what was told to Petitioner during the course of both the plea session and the sentencing proceeding, there could be no doubt in anyone's mind that adequate restitution, whether part of the plea bargaining agreement or not, was of prime importance to the Court in determining the scope of the sentence to be imposed. This being so, and the Court not being bound by the plea agreement, *United States v. Incrovato*, supra, the question of whether the Government complied or not with the agreement becomes a secondary issue because, simply stated, the Court would not have considered any recommendation of probation by the Government without the accompanying restitution.

■ Although somewhat repetitious, we must reiterate the salient facts considered by the Court in sentencing Petitioner. Petitioner fraudulently appropriated some $900,000.00 from the Government. From the beginning, it was made plainly clear to the Petitioner, by her counsel and by the Court, that restitution of this money would be the most favorable factor to be considered on her behalf at the time of sentencing. Petitioner offered to return the amount of $100,000.00. Because this sum did not even approach the amounts involved, and since no further offers were made by her, it could not be considered as anything but token payment.

Succinctly stated:

1) The Government made Petitioner's cooperation in the criminal investigation known to the Court,

2) The use of the word "may" in the foot–note of the plea agreement denotes that the Government had discretion to withhold a recommendation of probation if it did so on a reasonable basis,

3) Petitioner's failure to make restitution was such a reasonable basis,

4) In any event, Petitioner knew that the Court was not bound by the Government's recommendation, that the Court would insist on restitution, and that this would be a prime factor in considering the sentence to be imposed,

5) Petitioner was given every reasonable opportunity, both before and after sentence, to make a good faith attempt at restitution.

The keys to her cell were placed in Petitioner's unclean hands by the Court. Her unremitted efforts to profit from her crime left no other recourse to the Court but to take them back.

Petitioner makes two other arguments. She alleges that she did not understand the proceedings because they were conducted in English. As the record shows, this argument is completely frivolous as she was at all times assisted by an official interpreter, who translated all the proceedings for her.

■ She also alleges that she was not appraised of her right to appeal by the Court. This does not invalidate her plea. See Rule 32(a)(2) and Rule 11, Federal Rules of Criminal Procedure, cf. *United States v. Tursi,* 576 F.2d 396 (1st Cir., 1978).

Petitioner's petition for a Writ of Habeas Corpus is accordingly DENIED. The Clerk shall enter Judgment dismissing her petition.

■ The Clerk is ordered to serve a copy of this decision on the Hon. Dennis R. Knapp, Chief Judge, United States District Court, Southern District of West Virginia, Bluefield, Division.[3]

---

**3.** The present action was originally filed under the provisions of 28 U.S.C. § 2255, in the Southern District of West Virginia on May 1, 1979. The Government moved to dismiss the action for lack of jurisdiction. Petitioner responded that "[t]his is not merely a strict § 2255 motion attacking the *imposition* of the sentence ... but rather constitutes a § 2241 habeas corpus petition challenging the constitutionality of the proceedings which resulted in her current incarceration." (Emphasis in the original). In a "Supplement to Petition For Writ of Habeas Corpus", Petitioner further indicated that the "thrust of the instant petition is to attack the legality of Petitioner's plea of guilty as being involuntary and improperly induced by an unfulfilled promise of probation."

The District Court of West Virginia referred the matter to the Magistrate. On July 21, 1979 he recommended dismissal of the petition "[i]n light of the fact that the claims asserted in the habeas petition are cognizable in a § 2255 proceeding and that the motion procedure provides an adequate and effective remedy for testing the legality of petitioner's detention, thus depriving [that] Court of jurisdiction to resolve those claims on a petition for writ of habeas corpus under § 2241." Petitioner was allowed to file for relief (as is required by 28 U.S.C. § 2255) in the sentencing court, the United States District Court for the District of Puerto Rico.

Thereafter, Petitioner requested a transfer of this action to this District. She also filed another motion, in the West Virginia Court, to retain jurisdiction and supplement her initial petition. The supplement alleges that the failure of the sentencing judge to inform her of the consequences of her guilty plea, as regards the Parole Commission guidelines in handling her case, violate the intent of Rule 11 F.R.Cr.P. She also makes various challenges to Parole Commission action.

On January 15, 1980 the West Virginia Court ordered the transfer of "the pleadings and issues raised by the petitioner in her initial peti-

tion." That Court, however, "retained jurisdiction over the supplemental claims."

What is meant by that Court as included in the term "supplemental claims" is far from clear. In view of the Magistrate's report recommending that "all claims cognizable in a § 2255 proceeding" be referred to this Court, we would have thought that "supplemental claims" *exclude* challenges based on alleged Rule 11 violations. These are clearly cognizable only in the sentencing court and are thus outside the jurisdiction of the West Virginia Court. *Meyers v. Welch*, 179 F.2d 707, 708 (4th Cir., 1950); *Hunt v. United States*, 301 F.2d 663 (4th Cir., 1962); *Winston v. Mustain*, 562 F.2d 565 (8th Cir., 1977). However, the Chief Judge of the West Virginia Court, the Hon. Dennis R. Knapp, concluded otherwise.

In his Memorandum Order of March 26, 1980 (*Angeles Ramonita Garcia v. Kenneth R. Neagle, Warden and United States Parole Commission*, Civil Action No. 79–1046–BL), Judge Knapp adroitly attempts to sidestep this jurisdictional question by concluding that "section 2255 is inadequate or ineffective to test the legality of [Petitioner's] detention. *Zannino v. Arnold*, 531 F.2d 687 (3rd Cir., 1976); *Gomori v. Arnold*, 533 F.2d 871, (3rd Cir., 1976)." Reliance on these cases is clearly misplaced. In *Zannino*, supra, the court was concerned with *review* of a parole board decision, while in *Gomori* petitioner was challenging events subsequent to his sentence. In *Gomori*, the Court there stated, (at pp. 874–875):

".... This reasoning is supported by the emphasis placed by the Supreme Court of the United States in *United States v. Hayman*, 342 U.S. 205, 217, at note 25 [72 S.Ct. 263, 271, at note 25, 96 L.Ed. 232] (1952), on the purpose of 28 USC § 2255 as a remedy to correct erroneous sentences resulting from events in the trial court at or before sentencing.

[T]he United States Courts of Appeals have consistently held that a challenge to a sentence as executed by the prison and parole authorities may be made by petition for a writ of habeas corpus, whereas a challenge to the sentence as imposed must be made under 28 USC § 2255."

Since dependence on *Zannino* and *Gomori* is obviously based on unsound legal grounds, the West Virginia Court added two "practical" reasons for retaining jurisdiction. The first one was that "there are no material facts at issue with which the trial judge is more familiar." We find this to be an incredible assertion when the nature of the allegations is considered within the totality of the circumstances surrounding this case. To say that a mere reading of a transcript places the reader in as good a position as the trial judge to evaluate the nuances of what took place in his presence, particularly in a bilingual proceeding, needs no reply. It also ignores the access to the full record which

*this* Court has vis–a–vis the West Virginia Court. This record serves as a relevant back drop to Petitioner's allegations. Furthermore, it falls in the face of the express purposes behind § 2255 petitions in this District and any other District which does not have Federal detention centers within its jurisdiction.

We are particularly at a loss as to what "supplemental claims" were retained by Judge Knapp, when we consider the language that he uses in his cited opinion. Although in the Memorandum Order he recognizes "that some aspects, although not necessarily dispositive aspects, of the Rule 11 question are being considered by the sentencing judge, Hon. Juan R. Torreulla" (sic), and "that resolution of the issue should be stayed until Judge Torreulla (sic) renders his opinion on that particular issue", he then proceeds to *de facto* consider and decide those very issues for this Court.

In finding that this Court did not inform Petitioner of the Commission's guidelines for parole prior to accepting her plea or sentencing, Judge Knapp states that "[t]his sweeping power ... places the court in a position of at least appearing to omit information possibly critical to a defendant's decision making process *in order to facilitate a guilty plea.* Even the appearance of such a position serves to erode the court's necessary image as a fair and impartial body. Even the suspicion of such conduct by a court depreciates the image of the trial judge that is necessary to public confidence in an impartial and objective judiciary." (Emphasis supplied, citations omitted, Mem. p. 7–8).

Further, on this theme, Judge Knapp finds: "At least the failure of a trial judge to inform a defendant prior to accepting a guilty plea to certain offenses only that the Commission will consider all the other offenses charged in the indictment in determining his release date could constitute a flagrant abuse of Rule 11. The Commission's consideration of other offenses charged but not prosecuted could well place the prisoner in a position of being ineligible for parole and ineligibility for parole must be explained to a defendant before a plea can be accepted. *Durant v. United States*, 410 F.2d 689 (1st Cir., 1969); *Bye v. United States*, 435 F.2d 177 (1st Cir. 1970)" (sic). See Mem. p. 11.

In parting, Judge Knapp resolves: "In summary, the Court concludes that it is presented with a petitioner who has been denied procedural due process and congressionally mandated treatment at almost every step of the judicial/penological process. Actions by Government agencies, such as the Commission has engaged in, serve only to further undermine people's confidence in just and responsive government" (Mem. p. 12).

In the exercise of judicial restraint, this Court overlooks these unkind and inaccurate conclusions since they are most probably attributable to unfamiliarity with the record and/or faulty research. However, for the very reason that

we recognize and honor the importance to our system of justice of public confidence in a fair and impartial judiciary, we must clarify various matters embodied in the mentioned Memorandum Order, particularly as they apply to Rule 11 issues, as to which Judge Knapp's findings are *ultra vires* and without jurisdiction.

The relevant portion of the transcript of the plea and sentencing proceedings are attached as Appendixes of our opinion. It is inconceivable that an objective reading of the same can lead anyone to the conclusion that Rule 11 was "flagrantly abused", or that due process was denied to Petitioner.

Rule 11, in its pertinent parts reads as follows:

"(c) Advice to Defendant.

Before accepting a plea of guilty . . . ., the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

1) the nature of the charge to which the plea is offered, the mandatory ·penalty provided by law, if any, and the possible penalty provided by law; . . . ."

Nowhere in this Rule is there any requisite that the sentencing judge advise a defendant regarding parole eligibility requirements.

In fact, the "Notes of Advisory Committee on Rules" for the 1974 amendments, which are the relevant amendments to this case, specifically hold otherwise:

"Former rule 11 required the court to inform the defendant of the "consequences of the plea." Subdivision (c)(2) changes this and requires instead that the court inform the defendant of and determine that he understand "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered." The objective is to insure that a defendant knows what minimum sentence the judge must impose and what maximum sentence the judge may impose. This information is usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant. Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.

It has been suggested that it is desirable to inform a defendant of additional consequences which might follow from his plea of guilty. *Durant v. United States*, 410 F.2d 689 (1st Cir., 1969), held that a defendant must be informed of his *ineligibility* for parole. *Trujillo v. United States*, 377 F.2d 266 (5th Cir., 1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967), held that advice about eligibility for parole is *not* required. It has been suggested that a defendant be advised that a jury might find him guilty only of a lesser included offense. C. Wright Federal Practice and Procedure: Criminal § 173 at

374 (1969). See contra *Dorrough v. United States*, 385 F.2d 887 (5th Cir. 1967). The ABA standards Relating to Pleas of Guilty § 1.4(c)(iii) (Approved Draft, 1968) recommend that the defendant be informed that he may be subject to additional punishment if the offense charged is one for which a different or additional punishment is authorized by reason of the defendant's previous conviction.

*Under the rule the judge is not required to inform a defendant about these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant. Currently, certain consequences of a plea of guilty such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant.* For example, the judge may impose a sentence under 18 U.S.C. § 4202 making the defendant eligible for parole when he has served one third of the judicially imposed maximum; or, under 18 U.S.C. § 4208(a)(1), making parole eligibility after a specified period of time less than one third of the maximum; or, under 18 U.S.C. 4208(a)(2), leaving eligibility to the discretion of the parole board. *At the time the judge is required to advise the defendant of the consequences of his plea, the judge will usually not have seen the presentence report and thus will have no basis for giving a defendant any very realistic advice as to when he might be eligible for parole.* Similar complications exist with regard to other, particularly collateral, consequences of a plea of guilty in a given case." (Emphasis supplied).

Not only are *Durant* and *Bye* no longer the law since passage of the 1974 amendment to Rule 11, but in fact these cases concern a different situation altogether. Both *Durant* and *Bye*, which we should mention were § 2255 petitions, dealt with narcotics violators who, by virtue of 26 U.S.C. § 7237(d), were totally ineligible for any parole from sentence. See also *Otero-Rivera v. United States*, 494 F.2d 900, 903 (1st Cir., 1974). The present situation is clearly distinguishable in that what is involved here are the standards set by the Commission for becoming eligible for parole, rather than the *total ineligibility* for parole, as in *Durant* and *Bye*. Even if *Bye* and *Durant* were presently law, eligibility information need not be supplied by the Court. *Meaton v. United States*, 328 F.2d 379 (5th Cir., 1964), cert. den., 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965); *Red Wine v. Zuckert*, 317 F.2d 336, 338 (D.C.Cir., 1963); *United States v. Cariola*, 323 F.2d 180 (3rd Cir. 1963); *United States v. Parrino*, 212 F.2d 919 (2nd Cir. 1954); cert. den. 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954). See also *Herrera v. United States*, 507 F.2d 143 (5th Cir., 1975); *Rosas v. United States*, 505 F.2d 115 (5th Cir., 1974); *Fernandez v. United States*, 492 F.2d 771 (5th Cir., 1974); *Le Blanc v. Hen-*

## APPENDIX A

Partial transcript of change of plea proceeding held on February 12, 1977 in Cr. No. 76–154.

(tr. p. 5)

ANGELES RAMONITA GARCIA, having been previously duly sworn, was examined and testified upon her oath orally as follows:

(the following questions and answers were translated from English into Spanish and from Spanish into English by the Official Court Interpreter, who had been previously duly sworn.)

EXAMINATION BY THE COURT:

Q  Mrs. Garcia, you are under oath. That means that you must tell the truth, or if you do not, you will be held accountable for perjury.  Is that clear?

A  Yes.

Q  Nothing you say, however, can be held against you in the event that I do not accept your plea.

A  Would you please repeat that again?

Q  Although you can be held accountable for perjury for not telling the truth, nothing that you say here can be held against you in the event that I do not accept your plea?  Is that clear in your mind?

A  Yes.

Q  Have you heard your attorney state that he wished to enter a plea of guilty for you in counts 14, 68 and 75?

(tr. p. 6)

A  Yes, sir.

Q  Have you had the opportunity to discuss it with him?

A  Yes, sir.

Q  Has he explained to you the consequences of this plea?

A  Yes, sir.

Q  Do you agree with the plea?

A  Yes, sir.

Q  Before I accept your plea, I must be sure that you understand fully your rights and the consequences thereof.  I will, therefore, explain certain things to you.

If there is any time when you do not understand anything that I am telling you, or you do not understand anything about this proceeding, do not hesitate to ask me for any clarification.

A  Very well.

Q  I would like for the record your age and your education.

A  Sixty four.

Q  And what formal education have you had?

A  I studied four years of high school and one year college.

Q  By pleading guilty here there will not be any further formal proceedings against you in the sense that there will not be any trial.  That means that the Court will proceed solely on the basis of what takes place here today and the pre–sentencing report that I am going to order prepared.

You understand?

A  Yes.

(tr. p. 7)

Q  Were you to plead not guilty, however, you would be entitled to a public,

*derson*, 478 F.2d 481 (5th Cir., 1973), cert. den. 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); *Weaver v. United States*, 454 F.2d 315 (7th Cir., 1971); *Onick v. United States*, 425 F.2d 1292 (5th Cir., 1970); cert. den. 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970); *Smith v. United States*, 324 F.2d 436 (D.C.Cir. 1963), cert. den. 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1963); *United States v. Caruso*, 280 F.Supp. 371 (D.C.N.Y., 1967) aff'd. 399 F.2d 158 (2nd Cir. 1968) cert. den. 394 U.S. 904, 89 S.Ct. 1010, 22 L.Ed.2d 215 (1969); *Roberts v. United States*, 491 F.2d 1236 (3rd Cir., 1974); *Bunker v. Wise*, 550 F.2d 1155, (9th Cir., 1977).

In view of the above, this Court, which *does* have jurisdiction over *all* of the Rule 11 challenges, concludes that Petitioner is not entitled to § 2255 relief for failure of the Court to inform her of the Commission's guidelines as to parole eligibility.  See *Del Vecchio v. United States*, 556 F.2d 106 (2nd Cir., 1977); *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *United States v. Timreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

"Iudex damnatur ubi nocens absolvitur", Publilius Syrus, *Maxim 407* (Publilius by Pliny).

speedy trial before a Judge or a jury. At this trial you would be represented by counsel; if you could not afford counsel the Court would appoint counsel to represent you free of charge.

You would be presumed innocent until such time, if every, (sic) that the Government is able to prove to the satisfaction of the judge or jury beyond a reasonable doubt that you are guilty of the crimes charged.

You would be entitled to be confronted by all evidence that the Government has against you. You would be entitled to cross–examine all witnesses presented. You would be entitled to bring forth any evidence you have on your behalf to exculpate you of the charges against you.

You would be entitled to the privilege of self–incrimination, that is, you would not have to testify against yourself. You could of course, voluntarily take the stand if you wished to do so.

Do you have any questions?

A   No, sir.

Q   Have any threats or promises been made to you...?

A   No.

Q   ... to induce you to plead guilty?

A   No.

Q   Now, there is a plea bargaining agreement that has been entered into between your counsels and the United States Government?

A   Yes.

(tr. p. 8)

Q   And I believe this is your signature thereon?

A   Yes.

Q   Did you have an opportunity to read it and discuss it with your lawyers before you signed it?

A   Yes, my attorney gave it to me.

Q   Did you read it before signing it?

A   Yes, sir.

Q   It's in English.  Did you have it explained to you in Spanish?

A   Yes, he and my daughter explained it to me.

Q   Is your daughter present in the Courtroom now?

A   Yes.

Q   Did you have an opportunity to discuss this matter with your daughter?

A   Yes, I did;  not for a very long time, but we discussed it here.

Q   Did you have a chance to discuss with your daughter the fact that you are pleading guilty here today?

A   Yes.

Q   And after discussing it with her and your lawyers you have agreed to the fact that you want to plead guilty?

A   Yes.

Q   Well, let me explain one thing to you before we go any further.  This agreement, this plea bargaining agreement is an agreement between your lawyers and the Government lawyers.  The Court is ... (continued on tr. p. 9)

(Tr. p. 9) ... not bound by that agreement.  You understand that?

A   Yes, my attorney explained this to me.

Q   Did you understand that?

A   Yes, sir.

*       *       *       *       *       *

(tr. p. 9)

Q   But is there anything that you wish explained to you or anything that you did not understand?

A   Well, I believe that I have understood everything fairly well.

THE COURT:  Now, I am going to ask the United States Attorney to state for the record the evidence they have against you.

I want you to listen carefully to what they say, because I am going to ask you questions about that.

*       *       *       *       *       *

(tr. p. 11)

THE COURT:  What evidence do you have on count 14?

MR. GRAHAM: (U.S. Attorney makes statement of evidence)

THE COURT: Is that true?

DEFENDANT: Yes, sir.

THE COURT: Go to the next count.

MR. GRAHAM: Count 68, Your Honor, ... (U.S. Attorney makes a statement of evidence).

\* \* \* \* \* \*

(tr. p. 12)

THE COURT: Is that true?

DEFENDANT: Yes, sir.

MR. GRAHAM: Count 75, Your Honor, is a conspiracy count. (U.S. Attorney makes statement of evidence).

\* \* \* \* \* \*

(tr. p. 13)

THE COURT: Is that true, all of what he has said, regarding the conspiracy?

DEFENDANT: Yes, sir.

THE COURT: And you participated in that?

DEFENDANT: Yes, sir.

MR. ORTIZ DEL RIVERO: Yes, sir, she says.

THE COURT: State the maximum penalties that the defendant could be sentenced to in each one of these counts.

MR. GRAHAM: The penalties for the first count, which is the mail fraud count, is the maximum penalty of five years imprisonment and/or a one thousand dollar fine.

Count sixty–eight is the false statement charge, and the maximum sentence is five years imprisonment and/or ten thousand dollars fine.

The maximum sentence on the conspiracy count, your Honor, is five years imprisonment and ten thousand dollar fine, and/or.

\* \* \* \* \* \*

(tr. p. 14)

MR. ORTIZ DEL RIVERO: Your Honor, I have studied this case quite exhaustively and I know all the evidence the Government has. As a matter of fact, I have in my possession about a hundred statements of witnesses besides the information that I have gathered from several other people, and the defendant and I believe it in the best interest of Mrs. Garcia to enter a plea of guilty in these three counts.

I don't think that she would be successful in a full fledged trial and it's my best judgment of this case, and after considering for a long time, I believe she is better off by pleading guilty to three counts rather than standing trial for seventy–five.

THE COURT: Have you showed the defendant the evidence against her?

MR. ORTIZ DEL RIVERO: Yes, Your Honor, she has studied, especially the main testimonies which are very adverse to her, very prejudicial.

THE COURT: Mrs. Garcia, have you seen that evidence that was shown to you by counsel?

DEFENDANT: Yes, sir.

\* \* \* \* \* \*

(tr. p. 15)

THE COURT: The Court hereby accepts the plea, and enters an order that it is knowledgeable, voluntary and contains all the allegations of facts necessary to a plea of guilty. The pre–sentencing report shall be prepared and thereafter this matter will be set for sentencing.

I would like to ask counsel on the record right now in the presence of the defendant, because this is something that I will certainly consider at the time of sentencing, whether any provision is being made for restitution?

MR. ORTIZ DEL RIVERO: Your Honor, there is a civil case pending, but my brother Mr. Doltz (sic), is acting now as her attorney in this civil case and he could answer that better than I.

(tr. p. 16)

MR. DOLTZ (sic): May it please the Court.

We would like to inform the Court that at this moment a civil action has been filed in this Court in Civil Case No. 76–1417, which complaint very briefly states that there was a scheme to defraud the Govern-

ment, and it's very detailed in the complaint, and we would further like to inform the Court that this action avers or at least alleges that the defendant did establish a scheme in defrauding the Government in the amount of more or less one million dollars, Your Honor, and the defendant has stated to this attorney that the defendant will be in a position to restitute what ever amount of money is deemed just and proper after conferring with the U.S. Attorney.

This counsel has been retained for this purpose and in the next few weeks we will be in conversations with the U.S. Attorney to make the proper endeavors that there is a restitution be made if possible.

THE COURT: Very well. Is there anything further at this time?

MR. ORTIZ DEL RIVERO: Your Honor, as to that, may I add, Your Honor, that it should be clear when the time comes, the defendant is willing to restitute everything she can.

That is the way I understand, but naturally I don't want to interfere in this civil case because it's not my business. But I want that fact to be clear, if she can restitute, let's say "X" amount of money, she will do it.

She knows that.

(tr. p. 17).

THE COURT: Very well.

\*    \*    \*    \*    \*    \*

## APPENDIX B

Partial transcript of sentencing hearing held on November 18, 1976 in Cr. No. 76–153.

(tr. p. 6)

MR. ORTIZ: ...

\*    \*    \*    \*    \*    \*

Anyway, Your Honor, we pray leniency, Your Honor and to the Court to grant this lady an opportunity to rehabilitate herself. She has offered a certain amount of money as restitution and she is willing to pay whatever the Court deems just and proper under the circumstances.

There is a civil case pending which my brother, Mr. Dolz, also attending here, is representing her and I don't know what decision will come in that case. I am not entering into that matter now but I do wish to state to the Court that she will restitute whatever amount of money the Court deems just and proper that she has to pay.

THE COURT: What about the amount that she stole?

MR. ORTIZ: Your Honor, she has informed me she wishes to tell the Court, she is willing to pay whatever amount she took and—

THE COURT: How much is that?

MR. ORTIZ: Your Honor, as far as the numbers . . .

(tr. p. 7) . . . are concerned, I am in doubt. She told me that she believes, she is not sure if it is $100,000 or maybe more. But she offered $100,000.

THE COURT: You know you have to be kidding.

MR. ORTIZ: No your Honor.

THE COURT: Well, you must be because that is not the amount and she knows that very well.

MR. ORTIZ: Let me explain to Your Honor, if Your Honor please. Due to the fact that there are other people involved, she was waiting until the civil case. My Brother (sic), Mr. Dolz, gave her the numbers to know the exact amount and she will address the Court and tell the Court exactly what I am telling the Court. She is willing to restitute all the money she took. She has never denied that and I imagine it is more than $100,000, Your Honor.

The lawsuit is for about $900,000 but I don't know if that is the exact amount she took or not. My brother, Mr. Dolz will inform the Court as to that.

What I wish to tell the Court, very respectfully, is that she is willing and will restitute all the money that she took, whatever amount. Naturally, Your Honor, I don't know how that will be done but, I believe, Your Honor, that if she is willing to restitute and will restitute the money from whatever source she has it, the Court could grant an opportunity . . .

(tr. p. 8) . . . to this lady to rehabilitate herself. The Court and the Government have mechanisms in which she cannot fail. If she fails and if she fails because she is not truthful, the Court will find that out very soon and anyway, that this is not a question of kidding. I would not dare to kid this Court. I know it is over $100,000 but the exact amount, I don't know. It could be very easily figured and then she could make a commitment and will make the commitment to pay the best way she can.

I told her and we have told her a long time ago that the first time we came before the Court to enter a plea of guilty to three counts of that indictment, Your Honor, right away told us that the Court expected restitution and she knows that. She knows she has to pay.

Now, the exact amount, Your Honor, it is a question of numbers and I am very bad in numbers and I know it is over $100,000. I know that. Only that she informed the probation officer I believe, that she was willing to give $100,000 and I told her that that probably wouldn't be acceptable. It would be probably more money and she claims she wants to know how much money exactly is finally determined that she has to pay and that is the way the situation is, Your Honor. I don't know, I think she knows the seriousness of this matter and all the different circumstances when they are taken together, they make a very serious problem for her and I once more pray the Court to grant . . .

(tr. p. 9) . . . her an opportunity and through the mechanisms the Court has, the defendant cannot fail. She is an old lady, I mean very mature. She is 65, as far as I know, but she has the best intention to comply with the Court, Your Honor, as far as I have seen, and I earnestly pray the Court to grant her an opportunity.

My Brother (sic) Mr. Dolz was going to address the Court as to this question, Your Honor, very briefly.

MR. DOLZ: May it please the Court and Your Honor. This matter as to amounts involved in this scheme to defraud the Government, there is really a controversy as to the manner in which the amount has been computed by the Government.

We do believe that some of the people, not all of them, but some of the people that were attending the school were really trying to learn. They were receiving instructions and the Government alleges once the whole school was known to be in violation of the Veterans Administration regulations, the whole school would be penalized and there seems to be a controversy as to the exact amount.

We believe that not all the amount involved was part of the fraud. However, as Mr. Ortiz stated, we don't have the specific figures as to that.

In any event, Your Honor, we pray that the Court be as lenient as possible and that the defendant be allowed to . . .

(tr. p. 10) . . . at some time, whatever the Court would deem just and proper, to allow her some time for her to restitute whatever amount is set.

THE COURT: When do you think you will be coming up with the figure?

MR. DOLZ: Your Honor, we have been conferring with the attorneys from the Government and as of now, we haven't reached an agreement as to figures.

THE COURT: Do you think you will be able to come up with it within the next 120 days?

MR. DOLZ: I believe—I will oblige myself before this Court in the name of my represented that we will definitely come forth with the figure by that time.

THE COURT: Well, I think it is to your client's advantage to come up with it as soon as possible.

MR. DOLZ: I realize that, Your Honor.

THE COURT: Is there anything you wish to say?

MR. DOLZ: Not in my part.

MR. ORTIZ: Only one more thing and I am very sorry to take so much time but I really believe that this lady, she has up to now complied with everything that was ex-

pected of her and I am pretty sure as to that question of the money, some agreement, the agreement was that justice demands will be made some way or the other. She knows that.

Now, my pleading to the Court now is mercy because ...

(tr. p. 11) ... Your Honor, the modern philosophy is not to put people in jail. Justice would be better served by granting this lady the opportunity to live the last years of her life in peace and to rehabilitate herslef (sic) and do justice to the Government for whatever amount she obtained not lawfully. I have explained that to her not once, Your Honor, but many, many times. I have seen cases as bad as this one before and I know that restitution is the main factor and that when we came here for the plea, to enter a plea of guilty, the first word the Court pronounced was the Court expects restitution.

THE COURT: How long ago was that, do you recall?

MR. ORTIZ: That was, I believe, in the middle of this year, Your Honor. Around February, the end of February 1977.

THE COURT: Almost a year ago.

MR. ORTIZ: Yes. After that she cooperated with the Government in other investigations related to this case and in the meantime, my brother Mr. Dolz was dealing with, was representing her in the civil case and as far as I know, they have never reached an agreement. But there is a conference set for February, late January by Judge Magistrate Perez Gimenez. That is all we have to say, Your Honor.

THE COURT: Thank you. Is there anything you wish to say, Ma'am?

(tr. p. 12)

THE DEFENDANT: Well, I am in agreement with what you said. Regarding the students who were supposed to have come to school and did not come to school to pay the hours for the ones who did not come and if anyone of them wants to continue studying and complete the hours that they have to complete, I have always been willing.

There are for example, many students who obtained their licenses and others went through the school.

THE COURT: Is there anything else?

THE DEFENDANT: Well, I commit myself to be just with that because there were mistakes that were made and they were not all due to my fault.

THE COURT: Thank you.

MS. EDELMAN: May the Government be heard, Your Honor?

THE COURT: Yes.

MS. EDELMAN: May it please the Court. Mrs. Garcia was involved in this scheme to defraud the Government along with Ismael Rivera Vazquez and others. This was a scheme that she directed and it was not something that she was involved in as a mere participant. It was a continuing conspiracy which continued a cover up of the back dating of the applications which resulted in payments for periods of time in which students were not actually enrolled in this school.

As part of this cover up, Mrs. Garcia directed others,

(tr. p. 13)

including the veterans themselves and employees of the school, not to cooperate with the investigators from the Veterans Administration and the FBI.

Also as part of this cover up, records were altered in the school. As far as Mrs. Garcia's cooperation with the Government, we feel that this cooperation was not complete and that Mrs. Garcia has made no efforts in restitution, no voluntary efforts at all. If there is some dispute as to the method of figuring out the amount that was taken improperly, I know of no offer by Mrs. Garcia to compute this in another fashion that she considers more just.

As best as we can estimate, the amount taken was approximately $900,000 and I think the magnitude of this scheme and the amount of money that was taken justify a period of incarceration as well as restitution and a fine and I would ask the Court to

consider that, consider a term possibly of three years. Thank you, Your Honor.

\* \* \* \* \* \*

(tr. p. 15)

MS. EDELMAN: I believe part of the plea agreement included a final paragraph in which the Government agreed that should the cooperation of Mrs. Garcia be complete, that the Government would consider making a recommendation for probation and it is in terms of this paragraph that I say we do not consider the participation to be complete in that no restitution was made and therefore, we do not make the recommendation for probation. But, as I said before, I am not suggesting that Mrs. Garcia did not cooperate in terms of the continuing investigation. Rather she did. She did testify . . .

(tr. p. 16) . . . and she was available for testimony. I hope that clears that up.

MR. DOLZ: May it please the Court, Your Honor. As far as my memory goes, definitely it was agreed that defendant would cooperate. But it was everybody's understanding that it was to be the criminal investigation of the case.

THE COURT: Let me put your minds at ease. I would assume from everything that I am familiar with this case that she has cooperated to the fullest extent in the criminal investigation and that that was the plea bargaining agreement.

MR. DOLZ: Thank you, Your Honor.

THE COURT: Is that all?

MR. ORTIZ: That is all we have to say, very respectfully.

THE COURT: Do you know of any reason why sentence should not be imposed at this time?

MR. ORTIZ: No, Your Honor.

THE COURT: Ma'am, is there any reason why I should accept, why I should not sentence the defendant at this time?

MS. EDELMAN: No, Your Honor.

THE COURT: The following is the sentence of this Court:

It is adjudged in criminal case 76–153 that defendant, Angeles Ramonita Garcia, is hereby committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a period of five years in count 14, for a period of five years in count 68 and a period of five years in count 75.

Said periods of imprisonment to be served concurrently with each other.

It is further adjudged in criminal case 76 153 that defendant, Angeles Ramonita Garcia, shall pay a fine to the United States in the sum of $1,000 in count 14, in the sum of $10,000 in count 68 and the sum of $10,-000 in count 75 for a total of $21,000.

Defendant is ordered to stand committed until the fine is paid or she is otherwise discharged by due course of law. I will inform you that if within the next 120 days satisfactory restitution is made, I will consider a motion for reduction of sentence.

You realize, of course, that after 120 days I do not have any jurisdiction over this matter. That will be all.

MS. EDELMAN: May it please the Court. I would like to move at this time in accordance with the plea agreement for the dismissal of the remaining 72 counts of the indictment against Mrs. Garcia.

THE COURT: The motion is granted.