UNITED STATES of America, Appellee,

v.

Angeles Ramonita GARCIA,
Defendant, Appellant.

Nos. 80–1597, 82–1446.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1982.

Decided Jan. 17, 1983.

See also, D.C., 501 F.Supp. 472.

Michael E. Deutsch, Chicago, Ill., with whom John L. Stainthorp, Chicago, Ill., was on brief, for defendant, appellant.

H. Manuel Hernandez, Sp. Asst. U.S. Atty., San Juan, P.R., with whom Raymond L. Acosta, U.S. Atty., San Juan, P.R., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and HEMPHILL,[*] Senior District Judge.

COFFIN, Chief Judge.

Appellant Angeles Ramonita Garcia appeals from the district court's refusal to vacate her guilty plea, claiming violation of Fed.R.Crim.P. 11, ineffective assistance of counsel, and breach of a plea agreement. As to the last claim we agree, and order appellant re-sentenced to time served. The other claims are without merit.

I

Appellant, now some 70 years old, was charged in October 1976 in a 75-count indictment alleging mail fraud, conspiracy to defraud the United States, and making false statements to a government agency, all arising out of the operation of her beauty and barber school in Puerto Rico. The indictment alleged that appellant, in concert with others, helped veterans attending her school to obtain Veterans Administration payment of false claims by backdating their enrollment dates on which their eligibility for commencement benefits under the G.I. Bill was based. In return, the indictment alleged, appellant's school received tuition payments of $80 per month for the backdated period, and a $100 fee for backdating the VA forms.

On February 12, 1977, appellant pled guilty to three of the 75 counts pursuant to a plea agreement. The remaining 72 counts were then dismissed. Nine months later, on November 18, 1977, appellant was sentenced to five years' imprisonment and a $21,000 fine.

In May 1979, appellant sought a writ of habeas corpus from the U.S. District Court for the Southern District of West Virginia, alleging, inter alia, the grounds presented here. The West Virginia court ordered the bulk of appellant's claims transferred to the District of Puerto Rico, and, while ordering appellant's release on other grounds, stayed resolution of her Rule 11 claim pending its consideration by the Puerto Rico court.[1] See Garcia v. Neagle, 660 F.2d 983, 987 (4th Cir.1981). In June 1980, the district court

---

[*] Of the District of South Carolina, sitting by designation.

1. The West Virginia district court purported to retain jurisdiction over appellant's "supplemental" claims. See United States v. Garcia, 501 F.Supp. 472, 476–79 n. 3 (D.P.R.1980). Whether or not it meant to retain jurisdiction of the claims presented here, the jurisdiction of the Puerto Rico district court is well established, see id., and neither party has brought to our attention any indication to the contrary.

of Puerto Rico denied appellant's petition without an evidentiary hearing. On September 11, 1981, this court remanded for an evidentiary hearing on the assistance of counsel issue, and on April 22, 1982, on the basis of three days of hearings, the district court again denied appellant's petition. In the meantime, the Fourth Circuit Court of Appeals had reversed the grant of habeas corpus by the West Virginia court, *Garcia v. Neagle, supra,* and in May 1982, appellant was granted parole after having served some 28 months in prison.

Simultaneously with the criminal prosecution, the government sought $1.2 million in damages from appellant in a civil suit under the False Claims Act, 31 U.S.C. §§ 231–235. Partial judgment against appellant for $600,000 was granted in 1978, *United States v. Garcia,* Civ. No. 76–1417 (D.P.R. Jan. 16, 1978), *aff'd* 612 F.2d 5701 (1st Cir.1979), and judgment for the remainder of the government's claim followed in 1981, *United States v. Garcia,* Civ. No. 78–1005 (D.P.R. Nov. 30, 1981), appeal docketed, No. 81–1894 (1st Cir. Dec. 22, 1981).

## II

Appellant first claims error in the trial court's failure to advise her of certain factors affecting her parole eligibility—specifically, that the Parole Commission would consider all 75 counts of the indictment in determining her release date, and that the magnitude of the fraud ($900,000) would delay—but not preclude—her eligibility under Commission guidelines. These omissions, she claims, violated Fed.R.Crim.P. 11, and rendered her change of plea unconstitutionally unintelligent and involuntary. We reject both claims.

In its current version, Rule 11 only requires the court to advise a defendant of "the mandatory minimum penalty provided by law if any, and the maximum possible penalty." *Johnson v. United States,* 650 F.2d 1, 4 (1st Cir.1981). While the word "penalty" is not self-defining, it is evident from the advisory committee notes to the rule's 1974 amendment that "penalty" means the statutory nominal sentence and not actual time in prison after credit for good behavior and parole. *See* Fed.R. Crim.P. 11 advisory committee note on 1974 amendment (relevant penalties are "usually readily ascertainable from the face of the statute defining the crime").

As for appellant's constitutional claim, as to which appellant cites no authority, we are persuaded that nothing in the principles of due process requires the advice omitted here, or renders appellant's plea unintelligent or involuntary in the absence of that advice. Whether or not due process may ever require advice as to parole consequences, *compare, e.g., Hunter v. Fogg,* 616 F.2d 55, 60–61 (2d Cir.1980) *with Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979) *and Bell v. North Carolina,* 576 F.2d 564, 566 (4th Cir.1978), appellant has not shown that she was unaware of the actual statutory sentencing possibilities, or that the omitted information would have made any difference in her decision to plead guilty. In the absence of such a showing, we cannot say that appellant was denied due process. *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir.1976); *Kelleher v. Henderson,* 531 F.2d 78, 82 (2d Cir.1976).

## III

Appellant next claims that she was denied her Sixth Amendment right to the effective assistance of counsel because her attorney, Mr. Gerardo Ortiz del Rivero, allegedly failed to make adequate investigation of the facts, was unprepared for trial, pressured her into pleading guilty despite repeated protestations of innocence, and assured her that she would receive probation if she pled guilty. In addition, she claims that he failed to make adequate efforts on her behalf at sentencing—in particular, that he inexcusably failed to dispute the government's claim to more than $900,000, or to argue that appellant was unable to repay such a large sum. These defects, she claims, render her plea involuntary and require that it be vacated.

We agree that under our decision in *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978), appellant was entitled to rea-

sonably competent assistance at each stage of the proceedings below, from pre-plea investigation and preparation through advocacy at sentencing. We agree with the district court, however, that appellant was not denied such assistance here. The district court held three days of hearings on appellant's claims. It heard testimony from appellant, her sister, her daughter, and Mr. Ortiz del Rivero. Mr. Ortiz del Rivero denied appellant's claims, and testified that he had investigated the case, was ready for trial, left the plea decision to appellant, and made no guarantees of probation. After hearing the witnesses, and observing their demeanor, the district court gave "complete credibility" to Mr. Ortiz del Rivero, and found that appellant had "failed to demonstrate any errors committed by him, which were the result of neglect or ignorance, rather than from informed professional deliberations." Appellant urges us to disregard these findings, claiming, as we understand her, that the "predilection" of the court for the attorney caused it to make findings that were clearly erroneous.

Appellant makes much of Mr. Ortiz del Rivero's destruction of his case files upon leaving private practice to become Federal Public Defender for Puerto Rico, and his inability to recall the details of his pretrial investigation of the case. The disposal of case files, however, was explained and would itself account, at least in part, for counsel's imperfect recollection, inasmuch as the hearing on appellant's ineffectiveness claim was held more than five years after appellant was indicted and more than four-and-a-half years after she pled guilty. In any event, rational minds could reasonably draw different inferences as to the true extent of counsel's preparation in the case.[2] The trial court was fully justified in concluding that the many long visits which appellant testified to were not all spent, as appellant claims, in puffery and arm-twisting by Mr. Ortiz del Rivero, but in counseling, review of a multitude of government documents, and development of the facts, as Mr. Ortiz del Rivero claimed. Significantly, what appellant was confronting was a mammoth prosecutorial effort, involving some 75 counts, 80 prospective witnesses, and a co-defendant turned government witness.

■ Appellant advances a non-frivolous contention based on Mr. Ortiz del Rivero's performance at sentencing. Since restitution was of announced critical importance to the court's decision on sentence in the criminal proceeding, details of the amount were very much within counsel's responsibility and not, as he argued, beyond his concern since restitution was the subject of a separate civil suit with other counsel. We are not persuaded on the record, however, that his assistance on this issue was ineffective, notwithstanding his disclaimers of concern.

First, Mr. Ortiz del Rivero testified that he and appellant's civil counsel had gone over the figures several times prior to sentencing, with results uniformly unfavorable to appellant and at sharp variance with her claims to owing a much lower amount. *See* III TR 33–35 (Dec. 9, 1981). Though appellant has had more than four years since she was sentenced in which to come up with supporting evidence, she still proffers only her unsupported assertion that the government's figure was too high. In the meantime, judgment has already gone against her in the government's civil suit. Moreover, appellant's financial resources were evidently greater than she claims, for according to its brief, the government has already recovered almost all of the money it sought.

■ Second, Mr. Ortiz del Rivero's professions of ignorance and mathematical inability came after the court had rejected his offer of $100,000 and told him "[Y]ou have to be kidding. . . . [T]hat is not the amount and she knows that very well." In

---

2. We have canvassed the transcript and have also noted weaknesses in appellant's evidence, including contradictions on the highly material matter of the presence or not of appellant's daughter at appellant's house with counsel the night before the change of plea hearing. (Compare II TR 143–46 and I TR 124–25 with I TR 141.)

this context, Mr. Ortiz del Rivero's "ignorance" appears to have been a tactical attempt to avoid angering the court still further, and to divert the court from pressing the issue. In these circumstances, the trial court was amply supported in concluding that Mr. Ortiz del Rivero's handling of the restitution question at sentencing was the product of informed professional judgment rather than neglect, however unsuccessful his efforts may have been. We therefore have no basis for finding his assistance to appellant at sentencing ineffective. As we said in *United States v. Bosch, supra,* and *United States v. Thomann,* 609 F.2d 560, 566 (1st Cir.1979), the requirement of reasonably competent assistance of counsel does not open the door to "Monday-morning quarter-backing" of tactics, nor does it mean that counsel must make baseless arguments to the court to protect himself against later claims of incompetence.

## IV

Appellant's final claim is that the government breached the plea agreement. Under the agreement, appellant agreed to "plead guilty to three counts" and to "cooperate with any future inquiry in this or any other matter including interviews by Federal Bureau of Investigation Agents and testimony on behalf of the United States in any criminal proceedings." The government, in turn, promised to "make the defendant's cooperation known to the Court at sentencing". The agreement further provided that "[i]f the defendant's cooperation is complete and all testimony given is completely truthful, the United States has advised the defendant, that a recommendation to the Court at sentencing may include a recommendation of probation and fine." [3]

As the government notes, the agreement provides no guarantee that a recommendation of probation would be made, but only that the government *might* recommend probation if appellant's cooperation was complete. Thus, the government is only required "to show a good faith consideration of Petitioner's cooperation"—that is, "to set forth in the record sufficient reasons for its belief that [appellant] has not cooperated fully and that ... a recommendation [of probation] is not proper." 501 F.Supp. at 475. This, however, the government has failed to do.

▮ The government contends that appellant's obligation of cooperation under the plea agreement included an obligation to "cooperate" by making restitution in the government's parallel civil suit under the False Claims Act. Although it is undisputed that appellant had not yet made restitu-

---

3. The full agreement provided as follows:

"On February 11, 1977, in San Juan, Puerto Rico after extensive negotiations between counsel for the defendant, Angeles Ramonita Garcia, Gerardo Ortiz del Rivero, and attorneys for the Government, Jorge Rios Torres, Assistant United States Attorney, and James J. Graham, Special Attorney, United States Department of Justice, the parties in the captioned matter, expressly agree and understand that the below summarized paragraphs one through four are the complete and total agreement entered into by the defendant voluntarily after being repeatedly consulted by her attorneys during the course of the negotiations which covered several months.

1. The defendant agrees to plead guilty to three counts.

2. The defendant will cooperate with any future inquiry in this or any other matter including interviews by Federal Bureau of Investigation Agents and testimony on behalf of the United States in any criminal proceedings.

3. The defendant further understands that no commitment has been made by the United States to limit its presentation or efforts at the entering of the plea or in connection with sentencing. However, the Government will make the defendant's cooperation known to the Court at sentencing. (A)

4. The defendant further understands that this agreement does not limit prosecution for any perjury by the defendant in the future in connection with any testimony.

(A) If the defendant's cooperation is complete and all testimony given is completely truthful, the United States has advised the defendant, that a recommendation to the Court at sentencing by the United States may include a recommendation of probation and fine. However, in any case, the defendant understands that the sentence to be imposed shall be in the sole discretion of the Court and is not fixed in the plea agreement."

tion or agreed on a figure when she appeared for sentencing, we cannot agree that restitution was part of the cooperation required under the plea agreement.

While the concept of "cooperation" is broad enough in the abstract to cover restitution, its scope under the plea agreement was narrower. The agreement did not call for "cooperation" in the abstract, but only cooperation "with any future *inquiry* in this or any other matter *including interviews* by Federal Bureau of Investigation Agents *and testimony* on behalf of the United States in any *criminal* proceedings" (emphasis added). As to that *inquiry,* the assistant U.S. Attorney herself conceded at sentencing that appellant had lived up to the agreement: "[A]s I said before, I am not suggesting that Mrs. Garcia did not cooperate *in terms of the continuing investigation.* Rather she did. She did testify and she was available for testimony." 501 F.Supp. at 485. The lack of restitution notwithstanding, no other cooperation was required *by the agreement.* The presence of appellant's civil counsel at the criminal change of plea hearing does not alter our conclusion. To the government, and to the district court below, that presence was evidence that restitution was part of the plea bargain. The plea bargain document, however, expressly states that it embodies the "complete and total agreement" between the government and appellant; particularly where the amount involved is as large as it is here, restitution is a material condition unlikely to be left to implication. Implying such a condition now would work a material change in the plea bargain. *Cf. United States v. Runck,* 601 F.2d 968, 969–70 (8th Cir.1979) (per Gibson, C.J.).[4]

The government next urges us to construe its promise as wholly discretionary, but to do so would render a significant

element of the consideration for appellant's change of plea illusory. In the face of similar language in *United States v. Bowler,* 585 F.2d 851, 853–54 (7th Cir.1978), the Seventh Circuit held that "the very presence of [such language] in the written and executed plea bargain document ... shows that there was an implicit promise by the Government that it would consider the [ ] [stated] factors and *would make a recommendation* based on this consideration" (emphasis added). In *Bowler,* the agreement stated that "[t]he Government's recommendations as to incarceration ... may be reduced, based upon the extent of defendant's truthful cooperation ..., the condition of his health and other personal factors, and Antitrust Division guidelines which indicate that fines may be substituted for incarceration in appropriate circumstances." *Id.* at 853. Here, the only condition was cooperation. The differences between the two provisions, however, are negligible. We agree with the Seventh Circuit's conclusion that "[t]he inclusion in the agreement of [such] language ... would serve no purpose in the plea agreement unless construed to contain an implicit promise to consider the specified factors, for the Government had the authority to consider such mitigating factors even without the assent of the defendant":

"The Government had no need to secure a 'unilateral option' for it to consider such factors with an eye toward *reducing* its recommendation as to the sentence of incarceration. To construe the plea agreement as not including the Government's implicit promise to consider the specified factors would be to render the language mere surplusage. The language was included in the agreement as an indication to the defendant that these

---

4. In *Runck,* the trial court imposed as a condition of probation restitution of some $87,400. Because the plea bargain made no mention of restitution, the Eighth Circuit reversed and remanded, observing that "[w]hile the condition of restitution of a small amount might be acceptable because it would not necessarily materially alter the expectations of the parties to the bargain, restitution of a large amount should

have been part of the plea bargain or the possibility of its inclusion as a condition of probation made known and agreed to by the bargainers." *Id.* at 970. If restitution of less than $90,000 is material enough to demand express inclusion in a plea agreement, it follows ineluctably that restitution of some $900,000 must likewise be included.

factors would in fact be considered in arriving at the recommendation as to sentence. The Government will not be allowed to avoid the obligation it thus incurred by claiming now that the language literally promises nothing to the defendant. A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language. *Cf. United States v. Brown,* 500 F.2d 375 (4th Cir. 1974) (holding that where the prosecutor promised to recommend a particular sentence, the mere half-hearted recitation of a suggested sentence would not satisfy the plea agreement)." *Id.* at 854. (emphasis added).

The fact that the district court was not bound to follow any recommendation of probation—and that the court, in its own words, positively "would not have considered any recommendation of probation by the Government without the accompanying restitution", 501 F.Supp. at 475—does not alter the fact of breach, or render the plea agreement a "secondary" issue, 501 F.Supp. at 475. A guilty plea is a waiver of fundamental constitutional rights—"perhaps the most devastating waiver possible under our Constitution". *Dukes v. Warden,* 406 U.S. 250, 258, 92 S.Ct. 1551, 1555, 32 L.Ed.2d 45 (1972) (Stewart, J., concurring). When that waiver rests "in any significant degree" on a promise by the government, "so that it can be said to be a part of the inducement or consideration", as it is here, the promise must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (1971). As we observed in *Correale v. United States,* 479 F.2d 944, 949 (1st Cir.1973), a defendant offers this waiver "not in exchange for the actual sentence or impact on the judge", but for the prosecutor's promised performance. *Accord, Cohen v. United States,* 593 F.2d 766, 772 (6th Cir.1979) ("touchstone" of *Santobello* "is whether the prosecution met its commitment and not whether the court would have adopted the government's recommendation"); *United States v. Grandinetti,* 564 F.2d 723, 725–26 (5th Cir.1977); *Palermo v. Warden,* 545 F.2d 286, 295–96

(2d Cir.1976); *Harris v. Superintendent,* 518 F.2d 1173, 1174 (4th Cir.1975); *United States v. Brown,* 500 F.2d 375, 377 (4th Cir.1974). While the cases may be distinguishable on their precise facts, the principle is equally applicable here. Appellant upheld her end of the plea agreement; she was entitled to insist that the government do the same.

There remains the problem of remedy. Appellant asks that we vacate her plea and permit her to plead anew. The government, anticipating our disposition on the question of breach, urges that specific performance can be approximated by resentencing appellant to time served.

Where the government has breached a plea agreement, the choice of relief is largely committed to the sound discretion of the court under the circumstances of each case. Where withdrawal of the plea or specific performance would be meaningless or infeasible, a court may order imposition of a specific sentence. *Correale v. United States, supra,* 479 F.2d at 950; *accord, United States v. Bowler, supra,* 585 F.2d at 856. Because appellant has already served out her period of imprisonment (she was released from prison after serving some 28 months and is currently on parole), resentencing would serve no useful purpose. In view of appellant's advanced age, the unfairness to both her and the government of any trial, the less than egregious error committed by the government, and the strength of the government's case, we are persuaded that further proceedings are not in the interests of justice. We therefore adopt the government's proposal, and order appellant re-sentenced to time served.

*For the foregoing reasons, the judgment of the district court is reversed.*