# United States Court of Appeals
## For the First Circuit

No. 17-2134

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN DOE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Lipez, and Howard,
Circuit Judges.

Allison Koury for appellant.
Alexia R. De Vincentis, Assistant United States Attorney,
with whom Andrew E. Lelling, United States Attorney, was on brief,
for appellee.

September 23, 2022

**HOWARD**, <u>Circuit Judge</u>.  On May 17, 2016, defendant-appellant John Doe pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Shortly before sentencing, Doe moved to withdraw his guilty plea, arguing that his counsel was constitutionally ineffective and therefore, that his plea was unknowing and involuntary.  The district court denied the motion, and Doe appeals that denial.  He has also argued for the first time on appeal there was a "fatal omission" in his plea colloquy, and that the indictment in this case should be dismissed because it did not allege that he knew that he was not permitted to possess a firearm, as required by the Supreme Court's recent decision in <u>Rehaif</u> v. <u>United States</u>, 139 S. Ct. 2191 (2019).

On October 18, 2017, Doe was sentenced to fifteen years of incarceration, followed by three years of supervised release. The district court made clear during sentencing that it adopted the Sentencing Guideline calculation recommended by the probation office in the Presentence Investigative Report ("PSR").  The PSR in turn identified three predicate convictions -- two for possession with intent to distribute cocaine and one for assault with a dangerous weapon.  Because Doe had at least three predicate offenses, the district court found, he was subject to a mandatory minimum incarcerative sentence of fifteen years under the Armed Career Criminal Act ("ACCA").  The district court also denied Doe's

- 2 -

request to stay sentencing and hold an evidentiary hearing in light of his allegation that the government breached its obligations under a cooperation agreement by failing to file substantial assistance motions under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). Doe additionally appeals his classification as an armed career criminal and the district court's failure to conduct an evidentiary hearing before proceeding with sentencing.

For the reasons discussed below, we affirm both Doe's conviction and sentence.

## I. CHALLENGES TO THE PLEA AND CONVICTION

We begin with Doe's challenges to his plea and conviction. Doe argues, as he did in the district court, that his decision to plead guilty was not knowing or voluntary because it was predicated on his belief that trial counsel had filed a motion in federal court to suppress the firearms at issue. He further asserts that the plea was not knowing or voluntary because trial counsel was constitutionally ineffective in failing to file a motion in state court to vacate at least one of his qualifying predicate convictions. He also argues for the first time on appeal that the district court's failure to inform him specifically that he faced a mandatory minimum sentence violated Rule 11's core concerns and rendered his plea invalid. Finally, Doe contends that, in the wake of the Supreme Court's decision in Rehaif, 139 S. Ct. 2191, the indictment in this case failed to allege an

essential element of the offense charged and therefore must be dismissed.

Only Doe's ineffective assistance claim was raised in the district court in the motion to withdraw the guilty plea. Consequently, this is the only basis that we may review for an abuse of discretion, rather than for plain error.  See United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) ("As [the defendant] moved to withdraw his guilty plea prior to sentencing, we review the denial of the motion for abuse of discretion . . . [and] [t]he district court's factfinding supporting its denial of the motion . . . only for clear error."); see also United States v. Castro-Gómes, 233 F.3d 684, 686–87 (1st Cir. 2000) (same).

Doe's preserved ineffective assistance claim, however, cannot be resolved in this direct appeal.  We have consistently held that "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court" in the post-conviction context.  United States v. Negrón-Narváez, 403 F.3d 33, 40 (1st Cir. 2005) (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)); see also United States v. Rosario-Cólon, 431 F. App'x 4, 5 (1st Cir. 2011) ("[A] collateral proceeding brought under 28 U.S.C. § 2255, and not direct appeal, is usually the proper vehicle for a claim of ineffective assistance of counsel.").  We may make an exception,

however, "for cases in which trial counsel's ineffectiveness is manifestly apparent from the record." United States v. Wyatt, 561 F.3d 49, 52 (1st Cir. 2009).

Though it was raised below, Doe's claim cannot be decided purely on the record before us. To be sure, Doe filed several affidavits in the district court stating that he believed his original counsel had sought to suppress the firearms at issue and that this belief affected his decision to plead guilty. His successor counsel represented that the motion to suppress would have been meritorious. Beyond this, however, there is nothing in the record that sheds light on the actual substance of these hypothetical motions that should have been filed; nor is there any meaningful way for us to evaluate the claim that prior counsel was constitutionally ineffective because he failed to seek suppression. Doe's claim of ineffective assistance therefore is not "manifestly apparent from the record" and must be reserved for future collateral proceedings. Id.

Our review on direct appeal is limited to Doe's challenge to the sufficiency of his plea colloquy under Rule 11 and to the indictment under Rehaif, 139 S. Ct. 2191. Because neither claim was presented to the district court, we review each claim only for plain error. See United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004) ("Because the claim of Rule 11 error was not preserved by timely objection, the plain-error standard . . . applies, with

its requirement to prove effect on substantial rights, . . . [meaning] the defendant is obligated to show a reasonable probability that, but for the error, he would not have entered the plea."); United States v. Dawn, 842 F.3d 3, 5 (1st Cir. 2016) (same).

## A. Rule 11 and the Plea Colloquy

On appeal, Doe focuses his challenge to his conviction on his contention that his plea colloquy was facially invalid because of a "fatal omission" that rendered his guilty plea unknowing and involuntary.

Doe is correct that Rule 11 of the Federal Rules of Criminal Procedure requires the district court to "address the defendant personally in open court" and "inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty" he may face. Fed. R. Crim. P. 11(b)(1)(I). This requirement, like the others codified in Rule 11(b)(1), is intended to ensure that "(1) the plea is voluntary; (2) that the defendant understands the charge to which he has pled guilty; and (3) that the defendant knows the consequences of his guilty plea." Castro-Gómez, 233 F.3d at 687 (holding that these are the "'core' concerns of Rule 11(c)") (Rule 11 was subsequently amended in 2002 to explicitly include the list of requirements in the text of subsection (b)). Even in cases where a mandatory minimum sentence "is not finally determined until after the plea process is

complete," the district court is obligated under Rule 11 to inform the defendant of at least the possibility of a mandatory minimum sentence. United States v. Santo, 225 F.3d 92, 98 (1st Cir. 2000). And, the court's failure to do so renders the plea colloquy "imperfect." Castro-Gomez, 233 F.3d at 687 (citing Santo, 225 F.3d at 98).

The record reveals that the district court satisfied this requirement. During the plea colloquy, the district court inquired of Doe whether he had read the plea agreement and had discussed it with his counsel. The court went on to say that "if you look at Section 2 [of the plea agreement], it summarizes the penalties you become exposed to on conviction of this offense that you're pleading guilty to, and it includes the possibility of a minimum mandatory sentence of 15 years." Doe responded in open court that he understood this. Whether the district court could have been more persistent in its inquiry of Doe with respect to his understanding of the penalties he faced, we cannot say that the plea colloquy in this case was deficient, especially in the absence of any objection by counsel, either contemporaneously or in Doe's later motion to withdraw his plea.

Even if the plea colloquy was facially "imperfect," however, Doe must still show that, had the district court informed him that he faced a possible mandatory minimum sentence of fifteen years, he would not have pled guilty. See Dominguez Benitez, 542

U.S. at 76. He cannot make such a showing here, especially because the plea agreement specifically states that Doe faced a mandatory minimum sentence of fifteen years and that the government would recommend an incarcerative sentence of fifteen years. During the plea colloquy, Doe confirmed in open court that he had read the plea agreement multiple times and had discussed the agreement and its implications with counsel before agreeing to plead guilty. Moreover, Doe was advised by the PSR that he faced a mandatory minimum sentence of fifteen years of incarceration because he had been classified as an armed career criminal. And, Doe had the opportunity to (and in fact did) object to this classification prior to sentencing.

Read in conjunction, the plea agreement, the transcript of the plea colloquy, and the PSR make clear that Doe was fully aware of the potential mandatory minimum penalty that he faced and still chose to proceed and plead guilty. Doe therefore cannot carry his burden of establishing plain error. See United States v. Romero-Galindez, 782 F.3d 63, 67-68 (1st Cir. 2015) (holding that the defendant could not show that the district court's failure to advise him of the statutory maximum and minimum penalties was plainly erroneous because he was "made aware of the mandatory minimum and maximum imprisonment term during plea negotiations, as evidenced by the plea agreement" and because the penalties were correctly reflected in the PSR).

## B. <u>Rehaif</u> and the Indictment

Second, Doe contends that the indictment should be dismissed because it failed to adequately allege that he knew that he was not permitted to possess a firearm at the time of the offense. See <u>Hamling</u> v. <u>United States</u>, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it . . . contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend.").

In <u>Rehaif</u> v. <u>United States</u>, the Supreme Court made clear that "[t]o convict a defendant [for a firearm offense under 18 U.S.C. § 922(g)], the government must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. The knowledge requirement of section 922(g), the Court held, applies to all material elements of the offense, meaning the government had to allege and prove that a defendant knew that he was prohibited from carrying a firearm. <u>Id.</u> at 2196. Because the indictment does not clearly state that he knew he was barred from possessing a firearm, Doe argues, it is facially deficient and should be dismissed. The government has not contested the indictment's deficiency, so we assume that it, in fact, fails to adequately allege the essential elements of the charged offense.

This does not, however, mean that the indictment must be dismissed. "[D]efects in indictments [including the omission of

a material element of the charged offense] are not jurisdictional and thus are subject to waiver." United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016) (citing United States v. Cotton, 536 U.S. 625, 630 (2002)). And Doe waived his right to challenge the sufficiency of the indictment by pleading guilty. Id.; see also United States v. Burghardt, 939 F.3d 397, 402 (1st Cir. 2019).

Moreover, Doe did not argue in his original briefing that the deficiency in his indictment rendered his plea unknowing and involuntary because he was not properly advised of the charges against him. He was not barred by his guilty plea from raising this argument, see Urbina-Robles, 817 F.3d at 842, and his failure to do so until much later, in a letter filed under Fed. R. App. P. 28(j), means that the argument is waived. See United States v. Dávila-Félix, 667 F.3d 47, 51 n.5 (1st Cir. 2011).

Even if it had not been waived, this argument would be subject only to plain error review, because it was never presented to the district court. To succeed, then, Doe would have had to show that "he would have insisted on going to trial [rather than pleading guilty] . . . if he had been told of the scienter-of-status element" of § 922(g). United States v. Burghardt, 939 F.3d 397, 403 (1st Cir. 2019). In other words, Doe would have had to "make a specific showing of prejudice" arising from the district court's failure to inform him of an element of the crime to which he was pleading guilty. United States v. Antonakopoulos, 399 F.3d

- 10 -

68, 77 (1st Cir. 2005) (citing United States v. Olano, 507 U.S. 725, 735 (1993)); but see, generally, United States v. Gary, 954 F.3d 194, 198 (4th Cir. 2020) (holding, contrary to the First, Second, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits, that a district court's failure to inform a defendant of the scienter-of-status element of § 922(g) during a plea colloquy constituted structural error and rendered a guilty plea void). Doe cannot make such a showing here. During his plea colloquy, Doe agreed with the government's summary of the case against him, including the fact that Doe told police that he "had traveled in interstate commerce with the weapons and that he knew he should not have had those weapons."

Even if, contrary to our conclusion in Burghardt, we were free to agree with the Fourth Circuit that this kind of error could be structural, Doe has waived any challenge to his guilty plea on this basis. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues advanced in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Jackson v. Bartow, 930 F.3d 930, 934 (7th Cir. 2019) ("[T]he consequence of a 'structural' error is that it is not subject to harmless error review . . . but such errors can still be waived.").

## II.  CHALLENGES TO THE SENTENCE

In addition to challenging his conviction itself, Doe challenges his classification as an armed career criminal and the resulting fifteen-year mandatory minimum sentence.  He also argues that the district court should have conducted an evidentiary hearing prior to sentencing to determine whether the government had breached its obligations under the plea and cooperation agreements by failing to file substantial assistance motions under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).

We conclude that, even if Doe's challenge to the ACCA classification is not precluded by the appeal waiver in his plea agreement, his classification as an armed career criminal is appropriate under our precedent.  Although his challenge to the government's failure to file substantial assistance motions falls outside the scope of the appeal waiver, we nevertheless conclude that the district court did not err in declining to hear evidence before sentencing.

### A. Waiver of Appellate Rights

We consider first whether, in light of the waiver of appellate rights contained in the plea agreement, Doe is entitled to a merits review of his challenges to his sentence.  We have consistently held that written waivers of appellate rights are valid and enforceable as long as "(1) the written plea agreement clearly delineates the scope of the waiver; (2) the district court

inquired specifically at the plea hearing about any waiver of appellate rights; and (3) the denial of the right to appeal would not constitute a miscarriage of justice." United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008) (citing United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001)).  As a general rule, a waiver of appellate rights will not bar a defendant from arguing that his guilty plea was not knowing and voluntary, meaning the waiver of appellate rights only implicates Doe's challenge to his sentence and not to the plea itself.  See Isom, 580 F.3d at 43.  The waiver in this case also does not bar a challenge to either the conviction or sentence that is predicated on a claim of ineffective assistance of counsel or prosecutorial misconduct, meaning it does not foreclose Doe's argument with respect to the government's obligations under the cooperation agreement.

However, the appellate waiver does appear to apply broadly to all other challenges to the sentence, including to Doe's classification as a career offender for purposes of ACCA.  By its terms, the waiver of appellate rights prevents Doe from challenging "any sentence of imprisonment of 210 months or less . . . even if the Court's Guidelines analysis is different from that set forth in his plea agreement."  Doe's mandatory sentence stemming from his classification as an armed career criminal seems to fall within the plain meaning of this provision.  There is also no dispute that the district court inquired specifically about the waiver of

- 13 -

appellate rights during the plea colloquy. Doe's ACCA claim therefore merits substantive consideration only if certain conditions are met, and then only if a failure to do so would constitute a "miscarriage of justice." Teeter, 257 F.3d at 25. In this connection, Doe "faces a steep challenge" because "the miscarriage of justice reservation is to be applied sparingly and without undue generosity." Edelen, 539 F.3d at 87 (internal quotations and citations omitted). "The appropriateness of the exception turns on our consideration of several factors," including "the clarity of the alleged error, its character and gravity," prejudice to the government, and "the extent to which the defendant acquiesced in the result." Id. (quoting United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008)).

We do not need to consider the miscarriage of justice factors, however. Assuming arguendo that Doe's ACCA claim is not barred by his waiver of appellate rights in the plea agreement, the claim fails on the merits in any event.

## B. The ACCA Classification

Doe focuses his challenge to his classification as an armed career criminal on his contention that his prior convictions for possession with intent to distribute cocaine are not proper ACCA predicates because the Massachusetts drug distribution statute, Mass. Gen. Laws ch. 94C, § 32A, is not a "serious drug

offense" for purposes of ACCA.[1]  In particular, he argues that the Massachusetts statute is overbroad because, unlike the federal Controlled Substances Act ("CSA"), it criminalizes "dispensing," in addition to "manufactur[ing], distributing, or possessing with intent to manufacture or distribute a controlled substance."  See 18 U.S.C. § 924(e)(2)(A)(ii).  As a consequence, Doe argues, the Massachusetts statute criminalizes conduct that is not within the "generic guidelines offense."

To determine whether a conviction under the Massachusetts drug distribution statute qualifies as an ACCA predicate, we use the categorical approach, which requires that we look "only to the statutory definitions of the prior offenses," and not to the particular facts underlying the conviction.  Taylor v. United States, 495 U.S. 575, 600 (1990); see also Mathis v. United States, 136 S. Ct. 2243 (2016).  In doing so, Doe argues,

_____

[1] Subsequent to the oral argument in this appeal, Doe argued that, after Borden v. United States, 141 S.Ct. 1817 (2021), his Massachusetts conviction for assault with a dangerous weapon is no longer a proper ACCA predicate.  In Borden, the Court held that ACCA's elements clause does not "include[] offenses criminalizing reckless conduct."  Id. at 1827 (plurality).  We have previously held that, in Massachusetts, assault with a dangerous weapon cannot be committed recklessly.  See United States v. Hudson, 823 F.3d 11, 17 (1st Cir. 2016) ("[U]nder Massachusetts decisional law an [Assault with a Dangerous Weapon] conviction requires that the use or threat of physical force be intentional.") (citing Commonwealth v. Porro, 939 N.E.2d 1157, 1163–64 (Mass. 2010)).  We see no reason to deviate from our precedent.

- 15 -

we determine whether a state conviction is for a "serious drug offense" by comparing the state offense to its common-law or federal counterpart; in other words, we apply the same approach that we use when deciding whether a prior conviction qualifies as one of the enumerated offenses in ACCA's definition of a "violent felony." Mathis, 136 S. Ct. at 2248 ("ACCA defines the term 'violent felony' to include any felony, whether state or federal, that 'is burglary, arson, or extortion.' . . . . To determine whether a prior conviction is for generic burglary (or other listed crime) courts . . . focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary.").

Contrary to Doe's argument, the Supreme Court specifically disavowed this approach and held that "[t]he 'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." Shular v. United States, 140 S. Ct. 779, 781 (2020). Instead, we ask only whether the elements of the prior state conviction "necessarily entail one of the types of conduct identified in § 924(e)(2)(a)(ii)," namely manufacturing, distribution, or possession with intent to distribute a controlled substance. Id. at 784 (citing Kawashima v. Holder, 565 U.S. 478 (2012)) (emphasis in original); see also United States v. McKenney, 450 F.3d 39, 43-44 (1st Cir. 2006) ("[T]he word 'involving' [in the definition of

- 16 -

"serious drug offense"] has expansive connotations, [meaning] it must be construed as extending the focus of § 924(e) beyond the precise offenses of distributing, manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct." (quoting, inter alia, United States v. King, 325 F.3d 110, 113 (2d Cir. 2003) (cleaned up)).  To be sure, Shular does not suggest that "all offenses bearing any sort of relationship with drug manufacturing, distribution, or possession with intent to manufacture or distribute will qualify as predicate offenses under ACCA." McKenney, 450 F.3d at 45.  But it would go too far to say that a state statute that adds "dispensing" to the categories of prohibited conduct no longer defines an offense that "necessarily entail[s] one of the types of conduct identified in § 924(e)(2)(a)(ii)." Shular, 140 S. Ct. at 784.

Further supporting our conclusion is the fact that the Massachusetts Supreme Judicial Court ("SJC") has narrowed the definition of the word "dispense" to apply only to conduct covered by the federal CSA. Commonwealth v. Brown, 925 N.E.2d 845, 856 n.14 (Mass. 2010) (citing United States v. Badia, 490 F.2d 296, 298, n.4 (1st Cir. 1973), and concluding that the Massachusetts legislature "intended the same when it included 'dispense' in the drug statutes").  Under Massachusetts law, "the threshold element of unlawful dispensing is the issuance of an invalid prescription

- 17 -

. . . i.e., one issued without a legitimate medical purpose and not in the usual course of the physician's professional practice." Brown, 925 N.E.2d at 854-55 (emphasis added) (citing Commonwealth v. Comins, 356 N.E.2d 241, 247 (Mass. 1976)). Consequently, only a physician may "dispense"; everyone else "distributes." See Comins, 356 N.E.2d at 247. And, the SJC has concluded that "there is no space in the definition of 'dispense' for a physician acting outside his or her role as a physician, or for a patient acting outside his or her role as a patient," meaning a physician "unlawfully dispenses" a controlled substance only in a narrow set of circumstances -- such as when a physician has allowed his license to lapse. Brown, 925 N.E.2d at 856-57 and n.14.

Violation of the Massachusetts drug distribution statute is therefore categorically a "serious drug offense" and Doe's two

prior convictions under this statute were properly characterized as ACCA predicates.[2] [3]

## C. The Cooperation Agreement

Finally, Doe challenges the district court's decision to proceed with sentencing despite argument from defense counsel that the government had failed to honor the terms of the cooperation agreement. At the outset, we note that this challenge to his

---

[2] Doe also argues that his 1994 conviction in Waltham district court does not qualify as a predicate offense under the First Step Act. Passed in 2018, the First Step Act amended the definition of "serious drug felony" in the CSA to apply only to convictions that were within "15 years of the commencement of the instant offense." 21 U.S.C. § 802. However, the First Step Act only applies to offenses that "[were] committed before the date of enactment . . . if the sentence for the offense has not been imposed as of such date of enactment [here, December 21, 2018]." First Step Act, Pub. L. 115-391 § 401 (passed December 21, 2018); see also United States v. Wiseman, 932 F.3d 411, 417 (6th Cir. 2019) ("[T]he First Step Act is largely forward-looking and not retroactive."). Because Doe was sentenced in 2017, before the First Step Act went into effect, it does not apply here.

[3] After oral argument, Doe filed a pro se submission citing a recent Seventh Circuit opinion which held that the Illinois statutory definition of cocaine was "categorically broader than the federal definition" because its definition of cocaine included "optical, positional and geometric isomers," see United States v. Ruth, 966 F.3d 642, 647 (7th Cir. 2020), cert. denied, 141 S. Ct. 1239 (2021), where the federal definition of cocaine includes only its "optical and geometric isomers," 21 U.S.C. § 812. Doe mistakenly argues that the Massachusetts statute suffers from the same defect. We review this entirely new argument for plain error. See United States v. Figuereo, 404 F.3d 537, 540 n.3 (1st Cir. 2005). Unlike Illinois, Massachusetts's relevant statute does not reference any isomers. See Mass. Gen. L. c. 94c § 31. Based on this distinction and with the briefing and record before us, we cannot say that any potential error was clear or obvious. See United States v. Mastera, 435 F.3d 56, 61 (1st Cir. 2006).

sentence falls outside the scope of the waiver of appellate rights contained within the plea agreement. Indeed, the appellate waiver specifically reserves to Doe the right to challenge his sentence on the basis of prosecutorial misconduct.

The cooperation agreement between Doe and the government specifies that Doe would provide "complete and truthful information" to law enforcement about certain individuals and testify against those individuals if asked to do so. In exchange, the Agreement stated that if the "Defendant provide[d] substantial assistance in the investigation or prosecution of another person," the government "w[ould] file a motion under U.S.S.G. § 5K1.1 to recommend that the Court impose a sentence below the advisory Guideline range"; "if the U.S. Attorney determines it is appropriate," the government will "also file a motion under 18 U.S.C. § 3553(e) to enable the Court to impose a sentence below the statutory mandatory minimum." However, the Agreement also specified that "[t]he determination whether Defendant had provided substantial assistance rests solely in the discretion of the U.S. Attorney," who would make the decision "based on the truthfulness and value of Defendant's assistance."

At sentencing, Doe argued to the district court that it did not have sufficient information to proceed with sentencing and asked the court to hear evidence on whether the government had breached its obligations under the cooperation agreement. In

essence, Doe argued, the government "is in breach of the [cooperation] agreement by inducing this individual to agree to a harsh sentence and then pulling it out from under him," especially because Doe did "everything the government asked him to do." The district court denied the request for an evidentiary hearing. We review its denial for abuse of discretion. United States v. Alegría, 192 F.3d 179, 189 (1st Cir. 1999).

Under the Sentencing Guidelines, the government has the power, but not the obligation, to file a motion on behalf of a defendant who has "provided substantial assistance in the investigation or prosecution of another person who has committed an offense," asking the court to vary downward from the guidelines. U.S.S.G. § 5K1.1; see also Wade v. United States, 504 U.S. 181, 185 (1992). If the government also files a motion under 18 U.S.C. § 3553(e), as it agreed to consider here, the court may also vary downward from any statutory mandatory minimums. 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance . . ."); see also Melendez v. United States, 518 U.S. 120, 130 (1996). However, both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 are permissive, not mandatory; unless the government agrees explicitly to file such motions, the decision to file them is discretionary. Wade, 504 U.S. at 185

("[W]e see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions . . . .").

Whether there was an abuse of discretion by the district court in not holding an evidentiary hearing should be viewed in context. Our cases make clear that there are only certain scenarios in which a defendant can challenge the government's exercise of its discretion to file substantial assistance motions. United States v. Sandoval, 204 F.3d 283, 286 (1st Cir. 2000). One is where the government's decision not to file was based "on some constitutionally impermissible factor (say, race or religion), or is 'not rationally related to [some] legitimate Government end.'" Id. (quoting Wade, 504 U.S. at 185-86); see also United States v. Moore, 225 F.3d 637, 641 (6th Cir. 2000). Another is where "the government explicitly undertakes to make, or to consider making, such a motion." Sandoval, 204 F.3d at 286. Neither scenario is presented here.

Doe has not argued that the government's failure to file substantial assistance motions was not rationally related to some legitimate government purpose or that the decision was premised on his race, religion, sex, or membership in any other protected group. Instead, his argument is that the government promised to consider making substantial assistance motions and that it acted in bad faith by failing to file such motions. The argument

proceeds that the court abused its discretion by not holding an evidentiary hearing on the issue of the government's good faith. See Alegría, 192 F.3d at 188 (stating that a government promise to file a substantial assistance motion "carried with it an obligation to evaluate the appellant's assistance in good faith (although the 'sole discretion' language in which the promise was couched informed the nature of the obligation)").

"[A] party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment." Id. at 188 (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)). After the government offers "facially adequate reasons" explaining why a defendant "failed to achieve the substantial assistance benchmark," the defendant must "make[] a substantial threshold showing that the government acted in bad faith" to warrant an evidentiary hearing. Id. at 187-88.

Here, like in the agreement in Alegría, see id. at 186, the government agreed to file substantial assistance motions if Doe provided "substantial assistance in the investigation or prosecution of another person." But it cabined that agreement by explicitly stating that "[t]he determination whether Defendant had provided substantial assistance rests solely in the discretion of the U.S. Attorney." Before sentencing, Doe alleged that he did everything the government asked of him, that the government acted in bad faith by failing to give a reason for its failure to file

such motions, and requested the opportunity "to make a proffer of what [Doe] would show and what evidence that [he] would like to present."

Doe also alleged, without support, that the government was "refusing to honor the cooperation agreement and file a [§ 5K1.1] motion . . . [because it was] alleg[ing] the defendant breached somehow." The government denied that allegation and explicitly stated that it was not arguing that Doe breached either the plea agreement or the cooperation agreement. Rather, the government represented that it was "just not filing a [§ 5K1.1 motion] on this matter" based on the value of the assistance Doe provided. Defense counsel may not get an evidentiary hearing with unsubstantiated allegations such as these.

The district court declined, based on that mere request, to hold an evidentiary hearing and stated "that the government is within its rights . . . to decline under the agreements" to file substantial assistance motions. It told defense counsel that he could make a proffer after sentencing, then sentenced Doe.

In response to the district court's willingness to hear a proffer, the government provided further explanation as to why it chose not to file substantial assistance motions. It represented to the district court that Doe sat for a single, two-hour proffer with law enforcement, that it never called Doe to testify or appear in court, and that his name "never appeared on

a witness list."  "At best," the government stated, "Doe's name was mentioned to the defense in a case where they indicated that it would be possible that they might call Doe as a potential rebuttal witness."  Doe did not contest there was a single two-hour proffer but did say there was some evidence that his name had in fact appeared on a witness list.[4]

The government's several representations to the court about the reasons for its dissatisfaction with the limited nature of Doe's assistance more than constituted a facially valid reason for it to decide not to file substantial assistance motions.  This is so even if one were to accept Doe's contentions[5] that he did everything that was asked of him, that he provided a fully truthful proffer, and that his name may have in fact appeared on a witness list resulting in retaliation.  Consequently, we cannot say that the district court abused its discretion in declining to hold an evidentiary hearing.

---

[4] He also made an argument, not pertinent to the question of the government's reasons for not filing substantial assistance motions, that he faced retaliation because of his cooperation.

[5] We add that even if Doe's contentions were true, that does not lead to a conclusion that he provided substantial assistance. See Alegría, 192 F.3d at 184 (interpreting a cooperation agreement in light of the Sentencing Guidelines and stating that "full, complete and truthful cooperation, in and of itself, is not coextensive with the substantial assistance"); Sandoval, 204 F.3d at 286 n.2 ("[C]ooperation differs significantly from substantial assistance.").

The arguments made by our dissenting colleague are not supported by the record. Contrary to the dissent's assertion, the district court did not evince an erroneous view that "the government retained complete discretion to determine whether to file a substantial assistance motion 'except under very unusual circumstances.'" The district court said that "the evaluation of whether [the defendant's cooperation is] helpful enough to warrant a reward is what the government reserves to itself," that it is "up to the government to be satisfied," that "there's no obligation to be satisfied," that "the usual reason given is that [the government] is not satisfied," that the "very unusual circumstances" under which the government might have acted impermissibly "[don't] exist here," and that "[its] ruling is that the government is within its rights. . . to decline under the agreements [to file substantial assistance motions]." The court correctly recited the law. Its statements hardly reflect an ignorance of the law and certainly do not reflect that the court considered the government to have unbridled discretion to refuse to file substantial assistance motions.

**III. CONCLUSION**

For the foregoing reasons, the conviction and sentence are **<u>affirmed</u>**.

**-Dissenting Opinion Follows-**

**LIPEZ**, **Circuit Judge**, **dissenting in part**. I disagree with the majority on only one issue -- its conclusion that the district court did not err in its handling of Doe's request for an evidentiary hearing on the government's decision not to file substantial assistance motions under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e),[6] despite the government's promise to consider doing so in the Cooperation Agreement. In my view, that conclusion rests on a misreading of the record. The district court never applied the burden-shifting framework of United States v. Alegría, 192 F.3d 179 (1st Cir. 1999), to Doe's request because it misapprehended the law. Hence, I believe that the judgment must be vacated, and the case remanded to the district court so that it can apply that framework in determining whether Doe was entitled to an evidentiary hearing.

---

[6] The Sentencing Guidelines provide that, upon motion of the government stating that the defendant has provided substantial assistance in another criminal investigation or prosecution, a court may sentence the defendant below the applicable guidelines range. See U.S.S.G. § 5K1.1. If the defendant is subject to a mandatory minimum sentence, the government may also file a substantial assistance motion pursuant to 18 U.S.C. § 3553(e), which authorizes a court to impose a sentence below the applicable mandatory minimum. The government agreed to consider filing a motion under both provisions in Doe's Cooperation Agreement. During the district court proceedings, the parties referred to a motion filed under either provision interchangeably as a "5K motion" or a "substantial assistance motion." To avoid confusion, I will simply refer to such motions as "substantial assistance motions."

- 27 -

As the majority recognizes, Alegría similarly involved a written agreement between the government and a defendant in which the government promised to consider filing a motion for leniency at sentencing in exchange for the defendant's substantial assistance. 192 F.3d at 182, 188. The agreement in Alegría also contained a qualification -- using language nearly identical to that used in Doe's Cooperation Agreement -- that the decision to file a substantial assistance motion rested in the sole discretion of the government. Compare Doe's Cooperation Agreement ("The determination whether the Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney."), with Alegría, 192 F.3d at 184 ("[T]he [government's] decision whether to file a motion based on 'substantial assistance' . . . rests in the sole discretion of the United States.").

At sentencing in Alegría, the government declined to file a substantial assistance motion. 192 F.3d at 182. The defendant insisted that he was entitled to an evidentiary hearing on whether the government had an adequate reason for its decision not to file. Id. at 182, 186-87. The government argued that its decision was unreviewable because it had expressly reserved complete discretion to decide whether to file a motion. Id. at 184-85. We disagreed. We held that when the government (1) enters

an agreement with a defendant that specifically contemplates the filing of a substantial assistance motion at sentencing in exchange for the defendant's plea and cooperation, and (2) purports to retain complete discretion as to whether to file such motion, the government's discretion is nonetheless cabined by a requirement that it act in good faith and supply a facially adequate reason for its decision not to file a substantial assistance motion. Id. at 187. Otherwise, we explained, "a significant element of the consideration for appellant's change of plea" -- the government's promise to consider asking for leniency at sentencing -- would be rendered "illusory." Id. (quoting United States v. Garcia, 698 F.2d 31, 36 (1st Cir. 1983)).

The framework spelled out in Alegría is thus clear: when the government expressly agrees to consider filing a substantial assistance motion and it declines to do so, and the defendant challenges that decision, the government bears a modest burden of production -- not persuasion -- to show that it evaluated the defendant's assistance in good faith by offering a facially adequate reason for its decision not to file the motion. Id. That burden exists even when the government retains complete discretion as to whether to make that filing. Id. If the government satisfies its burden to provide a facially adequate reason, the burden then shifts to the defendant to demonstrate entitlement to an evidentiary hearing on the matter by making "a substantial

threshold showing that the government acted in bad faith."  Id.

Such a showing may include "persuasive evidence of either

substantial assistance or bad faith."[7]  Id. at 189.  The defendant

must satisfy "a fairly heavy burden" to show that he is entitled

to an evidentiary hearing.  Id. at 188 (quoting United States v.

McGill, 11 F.3d 223, 225 (1st Cir. 1993)).

**II.**

A fair reading of the record reveals that the district

court never applied Alegría's good-faith requirement and burden-

shifting framework.  Prior to sentencing, Doe filed under seal a

Motion for Downward Departure, arguing that, even though the

government had not filed a substantial assistance motion, he was

entitled to a downward departure because the government's decision

not to file such a motion was "not rationally related to [some]

legitimate [g]overnment end," and was instead based on the

government's unexplained determination that Doe had breached the

plea agreement.  At sentencing, in light of that motion, the

following exchange took place at sidebar:

---

[7] Despite the disjunctive language of Alegría, even if the defendant's threshold showing involves a claim of substantial assistance, the defendant must also provide persuasive evidence that the government's claim to the contrary involves bad faith in order to justify an evidentiary hearing.  In other words, the focus of Alegría's burden-shifting framework is the good faith of the government in declining to file a substantial assistance motion. See Alegría, 192 F.3d at 188-89.

- 30 -

**Defense Counsel:** This relates to the government refusing to honor the cooperation agreement and file a 5K motion and whether the government can establish that the defendant -- they allege the defendant breached somehow. We don't -- I don't know how he supposedly breached, all I know is that the government said he breached, and they won't file. So we need to establish whether or not the government has an obligation to file a 5K.

**Court:** I don't have the agreements in front of me. The standard agreements usually provide that it's at the sole discretion of the government to make a decision to move for a downward departure under 5K.

**Defense Counsel:** That may be the case, your Honor; however, the sole discretion is to determine whether or not a defendant provided substantial cooperation.

**Court:** So --

**Defense Counsel:** Whether a defendant breaches in some other manner is a question for the Court.

**Government:** Let me be very clear. The government's not alleging that he breached the cooperation agreement in the least; the government is just not filing a 5K on this matter. We're not suggesting that he breached any plea agreement.

**Defense Counsel:** So you induce a defendant to sign a plea agreement and [accompanying] cooperation agreement, and then you just pull it out and refuse to file a 5K without reason?

**Court:** Well, the usual reason given is that they're not satisfied. It's an interesting argument but --

**Defense Counsel:** Your Honor, if I may, I would like on the record to make a proffer

of what we would show and what evidence that we would like to present.

**Court:** I'll tell you what: I'll let you make the proffer after the conclusion of the proceedings just to protect the record, because the ruling is that the government is within its rights, I guess, to decline under the agreements. I'm assuming the agreements have the traditional language.

**Government:** Absolutely the standard language. I have it at my desk.

**Court:** It's up to the government to be satisfied. There's no obligation to be satisfied.

**Defense Counsel:** Is the government claiming --

**Government:** I'm not answering questions to you. The court asks the questions --

**Defense Counsel:** This is why we need testimony to establish it.

**Court:** No. I'll let you preserve the point. I don't think it's necessary to do it any more than we are doing it now, but I'll give you the chance after the conclusion of the proceedings if you want to amplify on it. . . . [T]he evaluation of whether [the defendant's cooperation is] helpful enough to warrant a reward is what the government reserves to itself. And the law is pretty clear on that.

**Defense Counsel:** I'm sorry. Just -- but that's not necessarily what they're saying. For a Court to impose sentence with this open issue without resolving it factually, I think it cannot --

**Court:** I guess my point is that I don't regard it as an open issue because of the discretion the government has. They simply say, "We've decided not to move." There's no enforceable obligation basically --

> **Defense Counsel:** There is an --
>
> **Court:** -- except under very unusual circumstances that I might possibly imagine, but it doesn't exist here. But I'll let you preserve the argument for appellate review if you want. I just don't want to disrupt things.

As the excerpted colloquy demonstrates, the district court held the legally erroneous view that the government retained complete discretion to determine whether to file a substantial assistance motion "except under very unusual circumstances that [the court] might possibly imagine," but never explained further. There is no support in the record for the majority's conclusion that the district court "correctly recited the law" and determined, in its discretion, that Doe was not entitled to an evidentiary hearing. To the contrary, the district court's statements make clear that it thought that it lacked the authority to review the government's decision. Instead, it speculated that the "usual reason" the government gives for not filing a substantial assistance motion is "that they're not satisfied," but the court did not inquire further because it concluded that, "basically," the government has "no enforceable obligation." Hence, without demanding any showing from the government (its burden of production under Alegría), the court simply concluded that "the government [wa]s within its rights . . . to decline [to file a substantial assistance motion] under the agreements," and proceeded to sentencing.

The post-sentencing proceedings did not, contrary to the majority's suggestion, remedy the district court's pre-sentencing error. During an "addendum" to Doe's sentencing hearing, after sentence had already been imposed, the court allowed the defense to elaborate on Doe's objection to the government's failure to file a substantial assistance motion for the sole purpose of preserving the issue for appeal. Counsel for Doe argued that the court "did not . . . ha[ve] sufficient information with which to impose sentence" and that the court was obligated by case law to ask the government to provide a reason for its refusal to file a substantial assistance motion and to evaluate whether an evidentiary hearing was warranted on the matter prior to imposing sentence. Counsel contended that "the government . . . decide[d], 'No, no 5K. We don't have to. We don't even have to give you a reason.' I say they do and case law says they do. . . . Th[e] court does have the ability to enforce the agreement. . . . I don't think the court had sufficient information to impose sentence at this time."

Counsel for Doe also argued that it was error for the district court effectively to conclude that the government could "induc[e] Doe to agree to a harsh sentence" by promising to consider filing a substantial assistance motion for Doe's cooperation and then "pull [that promise] out from under [Doe] saying, 'No, we don't have to file anything'" without any

- 34 -

explanation." Counsel argued, again for the sole purpose of preserving the issue for appeal, that Doe was entitled to an evidentiary hearing:

> Mr. Doe did everything, everything the government asked him to do. We would have presented evidence that he did a good job and gave substantial, significant information to the government. We would have presented evidence that the government said he, John Doe, hit a home run with his proffer. He did everything they wanted. He put his life in danger because of that cooperation your Honor. He has been attacked in jail. His wife has been threatened. He's in fear.

Counsel concluded: "If they [the government] say [Doe] breached, we want to know how. If they say he didn't breach, we want to know why they will not file a 5K."

The court asked if the government had anything to add. In response, the government finally elaborated on its decision, explaining that "Doe met with law enforcement for approximately two hours and provided them information" but "[t]he government chose not to use Mr. Doe." The government emphasized that "Doe did not testify, [he] did not appear in court. . . . [His] name never appeared on a witness list." The government explained that it "chose not to utilize Mr. Doe and that's as far as it goes." It continued, "[w]e're well within our right to do this. We didn't make any promises, rewards, inducements; we just chose not to use the . . . information. I'm not going to quantify whether it was

accurate, inaccurate. It was just information [Doe] provided us and we said we would consider it . . . and we chose not to use it."

Defense counsel responded that there was evidence that Doe's name did in fact appear on a witness list and, apparently, that the witness list made its way to the facility where Doe was awaiting sentencing -- placing his life in danger. In response, the court simply stated, "[a]ll right," sealed the transcript, and adjourned the proceedings. The court said nothing about the substance of what it had just heard.

Remarkably, the majority reads the district court's silence as a decision. That is, my colleagues read the post-sentencing record as establishing that the government provided "a facially valid reason" for refusing to file a substantial assistance motion, and "[c]onsequently, we cannot say that the district court abused its discretion in declining to hold an evidentiary hearing."

There is a major problem with the majority's conclusion. There is simply no indication in the record that the district court exercised any discretion whatsoever, pre- or post-sentencing. The court did not weigh the issues, engage in any back and forth with the parties, or give any indication that it was considering the arguments presented. It simply allowed the defendant to preserve the record for appeal and, in fairness, it allowed the government

to do the same.  The majority's conclusion that the district court did anything more is unsupported by the record.

Indeed, in the offer-of-proof sequence that I have described, the burden-shifting framework of Alegría was inverted. Doe was compelled to make his "counter-proffer" without knowing the government's reason for refusing to file a substantial assistance motion.  As I noted earlier, Doe concluded his proffer by stating,

> [o]nly after the government received [Doe's] assistance and the information did they decide, "No, no 5K.  We don't have to.  We don't even have to give you a reason."  I say they do and case law says they do.  If they say he breached, we want to know how.  If they say he didn't breach, we want to know why they will not file a 5K.

Thus prompted, the government finally provided a reason.  That simply is not how the Alegría burden-shifting framework is supposed to work.  See 192 F.3d at 186-89.

**III.**

The district court was obliged -- and failed -- (1) to hold the government to its burden under Alegría of providing a facially adequate reason for declining to file a substantial assistance motion, and (2) after considering the defendant's response to the government's explanation, to exercise its discretion to consider whether Doe was entitled to an evidentiary hearing.  The district court's failure to exercise any discretion

was an abuse of discretion.  See In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008) ("[A] trial court can abuse its discretion by failing to exercise that discretion.").  The district court made this error because of its misguided view of the government's unconstrained authority.  Unlike my colleagues, who do not recognize that failure, I would vacate the judgment and remand this case to the district court so that it can properly determine whether Doe is entitled to an evidentiary hearing under Alegría.

The stakes are high in such determinations.  Cooperation agreements are important to defendants, and they assist law enforcement in the plea-bargaining process.  Their implementation deserves more careful consideration than the treatment accorded by the district court and the majority in this case.  Hence, I respectfully dissent.